```
 1              IN THE UNITED STATES DISTRICT COURT
                  EASTERN DISTRICT OF ARKANSAS
 2                       WESTERN DIVISION

 3
    UNITED STATES OF AMERICA,
 4                        Plaintiff,

 5       v.                              No. 4:14CR00121-01 KGB

 6  NATHANIEL SMITH IV, a/k/a            Thursday, August 27, 2015
    Traffick,                            Little Rock, Arkansas
 7                        Defendant.     10:16 a.m.

 8

 9              TRANSCRIPT OF SENTENCING HEARING
             BEFORE THE HONORABLE KRISTINE G. BAKER,
10                UNITED STATES DISTRICT JUDGE

11
    APPEARANCES:
12
    On Behalf of the Government:
13
     MS. KRISTIN HUNTINGTON BRYANT, Assistant United States Attorney
14       United States Attorney's Office
         Eastern District of Arkansas
15       425 West Capitol Avenue, Suite 500
         Post Office Box 1229
16       Little Rock, Arkansas  72203-1229

17
    On Behalf of the Defendant:
18
     MS. KIM DRIGGERS, Assistant Federal Public Defender
19       Federal Public Defender's Office
         1401 West Capitol Avenue, Suite 490
20       Little Rock, Arkansas  72201

21

22

23       Proceedings reported by machine stenography and displayed
    in realtime; transcript prepared utilizing computer-aided
24  transcription.

25
```

1          (Proceeding at 10:16 a.m., defendant present, as follows:)

2              THE COURT:  Good morning.  We are here this morning

3  for sentencing in the case of the United States of America v.

4  Nathaniel Smith IV.  It is Case No. 4:14CR121-1.

5      The defendant, Mr. Smith, is present in court with his

6  attorney, Kim Driggers, and the government is represented today

7  by Assistant United States Attorney Kristin Bryant.

8      Please introduce the gentleman with you.

9              MS. BRYANT:  Your Honor, I have Little Rock Police

10  Detective Chris Ringgold.

11             THE COURT:  Thank you.  Are the parties ready to

12  proceed?  Ms. Driggers?

13             MS. DRIGGERS:  Yes, your Honor.

14             THE COURT:  Ms. Bryant?

15             MS. BRYANT:  Yes, your Honor.

16             THE COURT:  Has the government provided reasonable

17  notice to any victims?

18             MS. BRYANT:  Yes, your Honor.  We have attempted to.

19             THE COURT:  If you would, Mr. Smith, please approach

20  the podium.

21      Mr. Smith, if you would, please raise your right hand.

22  Ms. Washington is going to administer the oath.

23      (Defendant sworn in.)

24             THE COURT:  Mr. Smith, you are under oath.  If you

25  answer any of my questions today falsely, your answer may later

1  be used against you in another prosecution for perjury or making

2  a false statement.

3      Do you understand that?

4          THE DEFENDANT:  Yes, ma'am.

5          THE COURT:  Are you under the influence of any

6  medication, drugs, alcohol, or anything else that would impair

7  your ability to understand the proceeding today, Mr. Smith?

8          THE DEFENDANT:  No, ma'am.

9          THE COURT:  Mr. Smith, I'm going to go through the

10  background of this case first.  Initially you were charged in a

11  four-count indictment.  Counts 1 and 2 charged you with sex

12  trafficking by force, fraud, or coercion, a violation of 18

13  U.S.C. 1591(a)(1).  The offense in Count 1 occurred from in or

14  about January 2014 to on or about April 29, 2014.  The offense

15  in Count 2 occurred from in or about October 2013 to on or about

16  October [sic] 29, 2014.  Count 3 charged you with transportation

17  of an individual with intent to engage in prostitution, in

18  violation of 18 U.S.C. 2421.  That offense occurred between on

19  or about January 2014 through in or about February 2014.  Count

20  4 charged you with felon in possession of a firearm, a violation

21  of 18 U.S.C. 922(g)(1).  That offense occurred on or about May

22  15 of 2014.

23      On August 6 of 2014, a superseding indictment was filed

24  which added Marjorie Lee, also known as Candy, also known as Mar

25  Mar, as a defendant, in Counts 1, 3, and 4.  Count 1 and Count 3

1  were changed to conspiracy to commit sex trafficking by force,

2  fraud, or coercion, in violation of 18 U.S.C. 1594(c).  Count 4

3  was changed to aiding and abetting sex trafficking by force,

4  fraud, or coercion, in violation of 18 U.S.C. 1591(a) and (2).

5  Count 5 was added which charged you, Mr. Smith, with sex

6  trafficking by force, fraud, or coercion, in violation of 18

7  U.S.C. 1591(a).  The offenses in Counts 3 through 5 occurred

8  from in or about October 2013 to on or about April 29, 2014.

9  Count 6 was added which charged you, Mr. Smith, with

10  transportation of an individual with intent to engage in

11  prosecution, in violation of 18 U.S.C. 2421.  That offense

12  occurred between in or about January 2014 through in or about

13  February 2014.  Count 7 also was added, which charged you,

14  Mr. Smith, with felon in possession of a firearm, violation of

15  18 U.S.C. 922(g)(1).  That offense occurred on or about May 15

16  of 2014.

17        On December 19 of 2014, you appeared with counsel and

18  pursuant to a written plea agreement and Rule 11(c)(1)(C), you

19  proposed pleading guilty to Count 6 of the superseding

20  indictment.

21        In what is the proposed plea agreement -- and I say

22  proposed both in regard to your plea and in regard to the plea

23  agreement because, as we discussed the last time we were here,

24  Rule 11(c)(1)(C), I didn't accept your plea at the last hearing.

25  If I accept a Rule 11(c)(1)(C) plea, I agree that I will

1  sentence you in accord with what you and the government have

2  agreed to in the proposed plea agreement.  Right?  So I make

3  that decision today.  I haven't said that yet on the record.

4  I've given it a lot of thought, but I want to talk with you a

5  little more about it today.  But the proposed plea agreement

6  that you presented to me at the last hearing, the government

7  agrees to a recommended sentence of 120 months, or ten years'

8  incarceration; a base offense level of 14, which Mr. Smith

9  understands establishes an offense level which is likely below

10 120 months.  That's what's stated in the written plea agreement.

11 However, it was stated in the written plea agreement that you

12 make the agreement in exchange for the dismissal of the sex-

13 trafficking counts, which carry 15-year mandatory minimums.  A

14 four-level enhancement as the offense involved fraud or

15 coercion.  And eligibility for a two-level reduction for

16 acceptance of responsibility, unless you take any action

17 inconsistent with acceptance.

18      You and the government agreed in the proposed plea

19 agreement that the Assistant United States Attorney would make a

20 determination today regarding your eligibility for a three-level

21 reduction for acceptance.  You agreed in the proposed plea

22 agreement to waive all challenges to searches, seizures,

23 arrests, and statements in the investigation by any entity in

24 any forum, and you agreed to assist with the relinquishment of

25 all seized assets where forfeiture may be sought.  The parties

1    agreed that no other enhancements would apply under Section 2 or

2    Chapter 3 of the guidelines.  If the Court accepts the plea

3    agreement, as I said, the recommendation binds the Court.  So,

4    in other words, if I accept the guilty plea, I'm bound to

5    sentence you to the amount of time that is in the proposed plea

6    agreement.  If I don't think that's appropriate, then I can

7    reject the guilty plea and I can let you withdraw it and we

8    would go to trial on the counts -- all of the counts on which

9    you're charged.

10        In regard to the proposed plea agreement, as a condition of

11   supervised release, if the proposed plea agreement is accepted

12   and you're sentenced in accord with it, I may require that the

13   probation office provide state officials with all information

14   required under any sexual predator and sexual offender

15   notification and registration statutes, and I may direct you,

16   Mr. Smith, to report to these agencies personally for required

17   additional processing, such as an interview, assessment,

18   fingerprinting, polygraph testing, and DNA collection.

19        Mr. Smith, before we take up those issues, I'm going to ask

20   a few questions.  First is, are you satisfied with the work that

21   has been done with you in this case by Ms. Driggers as your

22   lawyer?

23            THE DEFENDANT:  Yes, ma'am.

24            THE COURT:  Are you satisfied with her work in all

25   respects?  If you're not, now is the time to tell me.

1        THE DEFENDANT:  Your Honor, I don't feel like -- I was

2   given an adequate amount of defense, but -- I was given a good

3   defense as far as the plea goes.  But it was never my intention

4   to go to trial.

5        THE COURT:  All right.  I'm not certain that I

6   understand that, Mr. Smith, and I want to ask some questions

7   about this plea agreement because for me to accept the plea

8   agreement, I want to satisfy myself that you understand it and

9   that this is what you want to do today.  What I hear you saying

10  is that Ms. Driggers has talked to you about it.  Right?

11       THE DEFENDANT:  Yes, ma'am.  Yes.

12       THE COURT:  In regard to the plea agreement, it's very

13  clear from the plea agreement that the count to which you're

14  getting ready to plead guilty has a guideline recommended

15  sentence that's less by half of what the 11(c)(1)(C) plea is

16  proposing to me.  Right?

17       THE DEFENDANT:  Yes, ma'am.

18       THE COURT:  But it's also clear that the counts that

19  are being dismissed by the government, if you were to go to

20  trial and be convicted, certain of those counts carry a required

21  15-year mandatory minimum.  Right?

22       THE DEFENDANT:  Yes.

23       THE COURT:  So, I mean, that's -- that's obvious from

24  the paperwork that's before me.

25       But I also note for the record and have carefully reviewed

1   the defendant's sentencing memorandum filed by Ms. Driggers.  It

2   is Docket No. 62 in the file.  And, Ms. Driggers, I will just

3   ask point-blank, the sentencing memorandum, if it is a Rule

4   11(c)(1)(C) plea that I accept, I sentence Mr. Smith in accord

5   with the plea agreement.  I am unclear why I have a sentencing

6   memorandum before me.

7           MS. DRIGGERS:  Should I answer that now, your Honor?

8           THE COURT:  Certainly.

9           MS. DRIGGERS:  Your Honor, up until this point,

10  Mr. Smith has remained silent.  He has exercised that right.

11  This is his only opportunity in court to present his side of the

12  story.  The presentence report has a duty to report all the

13  facts that are relevant to the offense of conviction and other

14  relevant conduct, and we believed that that presentence report

15  was lacking in several regards.  So the sentencing memorandum

16  was simply to give the Court Mr. Smith's account of the offense

17  conduct section of that presentence report, what it should say,

18  because up until now, he has remained silent.  He has a right to

19  tell the Court what his position is.

20      But as I mentioned in the plea agreement -- or in the

21  memorandum, he understands that this is not asking for a

22  variance or a departure, simply his side of the story.

23          THE COURT:  All right.  I appreciate that

24  clarification, and Mr. Smith has the right to do that.  I

25  understand and appreciate that.  I wanted to make certain that I

1   understood the context in which it was filed.

2        With that, as I have said, Mr. Smith, before I make the

3   decision on what to do with this plea, I want to make certain

4   that you recognize that the range of the offense and the

5   criminal history category set out in the presentence report and

6   the guideline range for imprisonment for the count to which you

7   indicate you want to plead guilty, according to the presentence

8   report, is 37 to 46 months.  It would be a 15 and a criminal

9   history category -- that is if it's a 15 with a criminal history

10  category V, or 41 to 51 months if it's a 16, offense level 16

11  with a criminal history category V.

12       The 11(c)(1)(C) plea agreement proposes that I impose a

13  120-month sentence under the proposed plea.  Right?

14       Ms. Driggers has explained to me the purpose of the

15  sentencing memorandum that was filed at Docket No. 62.

16       So with that, I will ask again, Mr. Smith, and I'm happy to

17  give you a recess to permit you time to think about it or for

18  you to visit with Ms. Driggers, but I will want to know on the

19  record from Mr. Smith that he wants to go forward with this

20  11(c)(1)(C) plea.

21       Do you wish to take a recess, Mr. Smith, or are you

22  prepared to answer that question?

23            THE DEFENDANT:  Ma'am, I'm prepared to go forward.

24            THE COURT:  All right.  And by telling me that you're

25  prepared to go forward, the question that I asked is, are you

1  going forward with the intent that you're still asking the Court

2  to accept this proposed Rule 11(c)(1)(C) plea?

3          THE DEFENDANT:  I don't know how to speak without

4  breaching the plea agreement.  I've been scared to death this

5  whole time, your Honor.  That's part of the reason I signed it

6  in the first place because I didn't want to go to trial and

7  receive 20 or 15 -- that was all I heard through the whole

8  proceedings.  Okay.  Well, you can get 15 or you can get 20.  So

9  I signed the ten because I was scared of that.  I've been scared

10 to death this whole time.  Never threatened.  I've never been

11 threatened or coerced, but I don't know what to call it.  I've

12 been scared to death to go and get that kind of time if I take

13 my chances at trial.

14      I'm not trying to be stubborn or so -- I'm ready to go

15 forward to sentencing.

16          THE COURT:  Why don't we take a short break.  We'll

17 take a short break and let me review this material, and,

18 Ms. Driggers, I'll give you opportunity to visit with Mr. Smith

19 and then we'll come back out.  But I'll stand out and take a

20 short recess for a few moments.

21      (Recess from 10:30 a.m. until 10:59 a.m.)

22          THE COURT:  Ms. Driggers and Mr. Smith, please

23 approach.

24          MS. BRYANT:  Your Honor, if I may before we start,

25 Ms. Driggers and I spoke during the break, and I know the Court

1   has made mention of the fact that there's a 15-year mandatory

2   minimum sentence in this case.  I think it's important for the

3   record to reflect that while, yes, there's a 15-year mandatory

4   minimum, based on Mr. Smith's criminal history and the guideline

5   range, his guideline range if he was convicted on just one of

6   the trafficking counts, 262 months to 327 months, and that's

7   with acceptance.  And if Mr. Smith went to trial, it would be

8   higher because the United States would not give him acceptance

9   points.  So while we've been talking about a 180-month sentence,

10  it would technically be much higher than the 262-month sentence,

11  and that's something I spoke to Ms. Driggers about when we were

12  making our plea negotiations.

13       I also wanted for the Court to be aware, the Court had

14  asked Mr. Smith about Ms. Driggers's representation, and I want

15  the Court to know that Ms. Driggers has come to my office on

16  multiple occasions looking at discovery.  She's been very

17  diligent with me, asking me lots of questions, and I think that

18  she's done a really good job, and I just wanted that on the

19  record.

20            THE COURT:  All right.  I appreciate that information

21  on the sentencing and the clarification with regard to that.

22       Ms. Driggers, is there anything that you wish to add?

23            MS. DRIGGERS:  No, your Honor.

24            THE COURT:  Ms. Driggers, are you and Mr. Smith

25  prepared to go forward?

1          THE DEFENDANT:  Yes, ma'am.

2          MS. DRIGGERS:  Yes, your Honor.

3          THE COURT:  Ms. Bryant, is the government prepared to

4   go forward?

5          MS. BRYANT:  Yes, we are, your Honor.

6          THE COURT:  All right.  With that, it's the finding of

7   the Court in the case of the United States v. Nathaniel Smith

8   that Mr. Smith is fully competent and capable of entering an

9   informed plea, that Mr. Smith is aware of the nature of the

10  charges and the consequences of the plea, and that the plea of

11  guilty is a knowing and voluntary plea, supported by an

12  independent basis in fact containing each of the essential

13  elements of the offense.  That repeats what I said at the last

14  hearing when we were together.  That's the point at which I

15  stopped.

16      The next point is for me to accept the plea, and before I

17  announce my decision or make my decision today, I want to go

18  through the objections to the presentence report because there

19  are several.  I want to take up those.  Let's go ahead and take

20  those up.

21      Ms. Driggers, have you and Mr. Smith had an opportunity to

22  review the presentence report?

23          MS. DRIGGERS:  We have, your Honor, and with respect

24  to paragraph 10, just taking that out of order, we were provided

25  with a copy of the arrest report just before our hearing here

1   today.  So we are prepared to withdraw the objection to

2   paragraph 10.

3         THE COURT:  All right.  Are there any other objections

4   on behalf of Mr. Smith to the presentence report?

5         MS. DRIGGERS:  Mr. Smith did object to the reference

6   to him being in the gang.  That is noted here, the identifying

7   data and in the paragraph 55.  He understands that there was

8   testimony by Detective Todd Hurd at the bond hearing, but in

9   spite of that, Mr. Smith believes that -- you know, his position

10  is that he was not in that gang and that that reference should

11  be removed from his presentence report.

12        THE COURT:  Ms. Bryant, does the government have a

13  response to that objection?

14        MS. BRYANT:  Your Honor, like Ms. Driggers said, at

15  the bond hearing, Detective Hurd offered extensive testimony

16  about why he believed that Mr. Smith was a member of the gang,

17  and it's my fault, I realized this week that I needed to put

18  Detective Hurd on the stand, and when I attempted to reach him,

19  he is in the Dominican Republic on vacation.  So I don't have

20  him here today.  Ms. Driggers was kind enough to provide me with

21  a transcript of the bond hearing, and I think we would stipulate

22  that that would be his testimony here today as to why he

23  believes Mr. Smith was a member of the gang.

24      I don't have an objection to the presentence report saying

25  Mr. Smith denies being a member of the gang.  Today I don't have

1   Mr. Hurd's testimony, but I could next week if that would be

2   important to the Court.

3           THE COURT:  Ms. Driggers, what's the response on

4   behalf of Mr. Smith to what Ms. Bryant has represented?

5           MS. DRIGGERS:  Well, your Honor, we would agree with

6   her that we would recommend that a sentence be included that

7   Mr. Smith denies being affiliated, but would note and maintain

8   our objection that it is overly prejudicial.

9           THE COURT:  I'm not understanding what you want me to

10  do.  Ms. Bryant has offered to include a sentence that says that

11  Mr. Smith denies the allegation, but I'm hearing you tell me

12  that doesn't satisfy the objection.

13          MS. DRIGGERS:  Your Honor, we can withdraw that

14  objection with the clarification that a sentence be added.

15          THE COURT:  All right.  And a sentence that you

16  propose be added both in regard to, as I understand it, the

17  alternate ID identification and also paragraph 55 is that

18  Mr. Smith denies any gang affiliation.

19          MS. DRIGGERS:  Yes, your Honor.

20          THE COURT:  All right.  Is that satisfactory to the

21  government as well, Ms. Bryant?

22          MS. BRYANT:  Yes, your Honor.

23          THE COURT:  All right.  And that resolves that

24  objection.  Correct, Ms. Driggers?

25          MS. DRIGGERS:  Thank you, your Honor.

1     THE COURT:  Are there any other objections by

2 Mr. Smith to the presentence report?

3     MS. DRIGGERS:  Your Honor, we did note in the

4 sentencing memorandum that we believe the offense conduct

5 section should be supplemented.  I understand that one of the

6 purposes of the offense conduct section is to include relevant

7 conduct and that the government has provided information to the

8 probation office that by a preponderance of evidence would

9 support the allegations.  But we believe also that the

10 information in Mr. Smith's sentencing memorandum should be

11 included in that section as well, or if the sentencing

12 memorandum could be attached as an addendum to the presentence

13 report, we would be satisfied with that as well.

14     THE COURT:  Ms. Bryant, what's the government's

15 response?

16     MS. BRYANT:  Your Honor, I have no objection to it

17 being attached to the presentence report.

18     THE COURT:  I'm going to look at our probation office

19 to see if that's an acceptable method.  This, my understanding

20 is, will be transported to the Bureau of Prisons.  Is that

21 something they would accept if the Court orders that?

22     PROBATION OFFICER:  Yes, ma'am.  If the Court orders

23 it be attached, they will accept it.

24     THE COURT:  All right.  With that, since that is what

25 Mr. Smith has requested, I do not hear the government objecting

1    and probation has informed me that that doesn't violate any

2    protocol in terms of how this is transported to the Bureau of

3    Prisons.  I will direct that the sentencing memorandum be

4    attached to the presentence report as an addendum.

5         The sentencing memorandum is Docket No. 62 in this file.

6         Are there any other objections?  First, Ms. Driggers,

7    before I get there, does that satisfy Mr. Smith's objection in

8    regard to the relevant conduct?

9              MS. DRIGGERS:  Yes, your Honor.  And we do not have

10   any more objections.

11             THE COURT:  Ms. Bryant, any objections on behalf of

12   the government to the presentence report?

13             MS. BRYANT:  No, your Honor.

14             THE COURT:  Having resolved all the objections to the

15   presentence report, I'll adopt the presentence report as it's

16   been amended through my orders today as the findings of fact of

17   the Court.

18        With that, I've made the decision that I will accept

19   Mr. Smith's plea.  Mr. Smith is now adjudged guilty of Count 6

20   of the superseding indictment.

21        Yes, ma'am?

22             PROBATION OFFICER:  Your Honor, for clarification, if

23   the sentencing memorandum is filed under seal, I believe the

24   Court may have to remove that in order for us to attach it with

25   the presentence report.

1    THE COURT:  My understanding was that it was not.  It

2    is not filed under seal in this case.

3    PROBATION OFFICER:  Okay.  Thank you, your Honor.

4    THE COURT:  Thank you for requesting clarification.

5    As I stated, in regard to the plea, the plea is therefore

6    accepted and Mr. Smith is now adjudged guilty on Count 6 of the

7    superseding indictment.

8    With that, since I have accepted the plea agreement, even

9    though the plea agreement stipulates to the sentence of

10   imprisonment that I am to impose, I am still required,

11   Mr. Smith, to go through and to establish the guideline range

12   and hear any objections and determine what guideline range your

13   sentence would be.  So there are certain things that we will

14   still go through now in regard to that.

15   In regard to Count 6, Count 6 was transportation of an

16   individual with the intent to engage in prostitution.  The base

17   offense level under the guidelines for that offense is 14.

18   Here there are four specific offense characteristic points

19   attributed.  Subsection (a)(2) applies, and the offense involved

20   fraud or coercion; therefore, a four-level enhancement applies

21   under sentencing guideline 2G1.1(b)(1).  As I said, it is a

22   four-level enhancement under specific offense characteristics.

23   There are no victim-related adjustments.  There are no

24   adjustments for role in the offense.  There are no adjustments

25   for obstruction of justice.

1          The adjusted offense level subtotal is an 18.  There's a

2    two-level adjustment for acceptance of responsibility, as the

3    parties agree to in the plea agreement.

4          Does the government move to award a third point,

5    Ms. Bryant?

6                MS. BRYANT:  Yes, your Honor.

7                THE COURT:  The third point will be awarded.

8          There are no Chapter Four enhancements.  So the total

9    offense level becomes a 15.

10         It was 14 at the base, plus four specific offense

11   characteristic points, brings it to an 18.  Minus two for the

12   acceptance of responsibility.  Minus the third point awarded by

13   the government on its motion.  Brings us to an offense level of

14   15.

15         Criminal history convictions for Mr. Smith are set out on

16   pages 7 to 10 of the presentence report.  They establish a

17   subtotal criminal history score of 12.  That establishes a

18   criminal history category of V.

19         With an offense level 15, criminal history category of V,

20   we'll turn now to talk about the potential punishments.  In

21   regard to imprisonment, the statutory provision, the maximum

22   term of imprisonment is ten years, under 18 U.S.C. 2421.

23         Under the guidelines, with the third point -- and if you'll

24   bear with me just a moment.  Under the guidelines with the third

25   point, criminal history V, offense level 15, the guideline range

1    is 37 to 46 months.

2         In regard to supervised release, under the statute, the

3    Court shall impose a term of supervised release of five years to

4    life under 18 U.S.C. 3583(k).

5         Under the guidelines, since the statute requires a term of

6    supervised release of five years, the guideline requirement for

7    a term of supervised release also is five years to life.

8         For probation, under the statute, Mr. Smith is eligible for

9    probation for not less than one, nor more than five years

10   because the offense is a Class C felony, provided one of the

11   following is imposed as a condition of probation, unless

12   extraordinary circumstances exist:  A fine, restitution, or

13   community service.

14        Under the guidelines, Mr. Smith is ineligible for probation

15   because the guideline range is in Zone D of the sentencing

16   table.

17        In regard to fines, under the statutory provision, the

18   maximum fine under the statute is $250,000.  Under the

19   guidelines, the fine range is 4,000 to $40,000.

20        Restitution does not apply in this case.

21        There is a $100 mandatory special assessment for each count

22   of conviction.  Here Mr. Smith has pled guilty to one count.

23   The costs of prosecution may be imposed.  Those are set out in

24   the presentence report.  And the denial of federal benefits does

25   not apply.

1    Ms. Driggers, are there any objections on behalf of

2  Mr. Smith to my interpretation of the sentencing options?

3            MS. DRIGGERS:  No, your Honor.

4            THE COURT:  Ms. Bryant, any objection on behalf of the

5  government to my interpretation of the sentencing options?

6            MS. BRYANT:  No, your Honor.

7            THE COURT:  At this time, Ms. Driggers, I will ask --

8  Ms. Bryant, my understanding is there are no victims who wish to

9  make a statement; is that correct?

10            MS. BRYANT:  That's correct, your Honor.

11            THE COURT:  And, Ms. Driggers, I'll let you say what

12  you want to say on behalf of Mr. Smith.  And then if Mr. Smith

13  wants to, he may address the Court as well.

14    You don't have to do so, Mr. Smith.  It's up to you.  I

15  won't hold it against you if you opt not to.  It's 100 percent

16  up to you.

17    After you all have gone, then I'll allow Ms. Bryant to

18  close for the government.

19    Ms. Driggers?

20            MS. DRIGGERS:  Thank you, your Honor.  Based on the

21  information presented in our sentencing memorandum, the Court

22  probably understands that this was a difficult decision for

23  Mr. Smith to make with a guideline range of 37 to 46 months.

24  But I do want to make the point on the record that all plea

25  offers were conveyed to Mr. Smith, and this was the only one

1    that allowed him to plead to a crime which did not carry a

2    mandatory minimum of 15 years.  So because of that, we have

3    struggled to make the right decision, but he did plead to a

4    statute that he was guilty of.

5         He does want to offer the Court some information about his

6    personal history and characteristics so that he is not forever

7    defined by the counts that were dismissed and the counts that

8    were in the offense conduct section.

9              THE COURT:  You may proceed.

10             THE DEFENDANT:  Your Honor, I'd just like to say I

11   just really want to give the Court an insight on the type of man

12   that I was raised to be.  I can remember back when I was three

13   years old and my dad was at work there -- that's my family -- my

14   mom, she took me over my grandmother's house, and she told me to

15   go in and get some salt because all the stores had closed.  And

16   I had just gotten through watching the Kung Fu Theater, and I

17   told my granddad when I got to the door, I said, "I'm going to

18   kick your butt."

19        He said, "I'm going to kick yours, too."

20        And then my grandma got me.  And then when I got in the car

21   to drive home, with tears on me, got out of the car and my mom

22   got me.  And when I got home, my dad got home from work, he got

23   me.

24        So I said that just to say I was raised by that proverbial

25   village to be a man.  So today I want to be sentenced as a man

1    and not a pimp because that's what I'm not.

2        Thank you.

3            THE COURT:  Ms. Bryant, does the government have

4    anything that it wishes to add?

5            MS. BRYANT:  No, your Honor.

6            THE COURT:  All right.  With that, I'm going to pass

7    out a proposed set of conditions for supervised release, give

8    you all an opportunity to review those, and then I will address

9    those as well as addressing the sentence in this case, but I'll

10   take a short recess to permit you to review those.

11   Ms. Washington will hand those out.

12           MS. DRIGGERS:  Thank you, your Honor.

13       (Recess from 11:16 a.m. until 11:26 a.m.)

14           THE COURT:  Ms. Driggers and Mr. Smith, please

15   approach.

16       Before we took our most recent recess, I passed out to the

17   lawyers a set of proposed conditions.  I've given you all an

18   opportunity to review them, and I'll hear any objections or

19   arguments, if there are any, to the proposed conditions.  If

20   there are objections, I will rule on them, and then I will make

21   particularized findings as to the necessity for the conditions.

22       Ms. Driggers, have you and Mr. Smith had an opportunity to

23   review the proposed conditions?

24           MS. DRIGGERS:  Yes, your Honor.

25           THE COURT:  Do you have any objections to any of the

1    proposed conditions of supervised release?

2            MS. DRIGGERS:  Yes, your Honor.  First of all, thank

3    you for letting us see these in advance.  Not all courts do that

4    and it's important, especially when there are lengthy conditions

5    that are proposed.

6        If we could start with paragraph two.  Mr. Smith

7    acknowledges, as he did in his plea agreement, that he will have

8    to register with state agencies under these sex offender laws,

9    but we would propose removing the last -- well, I guess I'll

10   just read it.  We have no objection with the language that says:

11   "The probation officer will provide state officials with all

12   information required under any sexual predator and sex offender

13   notification and registration statutes and may direct the

14   defendant to report to those agencies personally."  But we would

15   request that the additional language be removed.  We believe

16   that it is the state who decides what is required, and that may

17   be interview and assessment, it may be fingerprinting, that may

18   be polygraph, but that's up to the state to decide.  And so we

19   would ask that that last part of the sentence be removed.

20           THE COURT:  Ms. Bryant, what is the government's

21   response?

22           MS. BRYANT:  Your Honor, I would look to Ms. Lawson

23   first to make sure that she agrees with that statement.  I know

24   that once defendants are taken into -- I think once they are

25   sentenced, they are given an assessment.  I don't know if it's

1    by the BOP or if it's by the state.

2              PROBATION OFFICER:  It's I believe -- both will

3    probably do their separate assessments, and what that entails is

4    strictly up to those agencies as to what they require.  This

5    language was probably drafted from the sex offender specialist's

6    knowledge, that they will do these assessments.  And I believe

7    if the Court is inclined at just stopping the sentence at

8    "personally," that would suffice because I'm pretty sure that

9    the state is going to do their assessment.

10             MS. BRYANT:  I have no objection to Ms. Driggers's

11   changes.

12             THE COURT:  All right.  With that, I'll grant the

13   objection and we will lift this condition.  The proposed

14   condition will read:  "The probation officer will provide state

15   officials with all information required under any sexual

16   predator and sex offender notification and registration statutes

17   and may direct the defendant to report to these agencies

18   personally."

19             MS. DRIGGERS:  Thank you.

20             THE COURT:  All right.

21             MS. DRIGGERS:  With respect to paragraph three, the

22   defendant just objects to the requirement that he submit to sex

23   offender treatment.

24             THE COURT:  Ms. Bryant?  What's the government's

25   response?

1          MS. BRYANT:  Your Honor, given the instant offense and

2     the relevant conduct listed in the presentence investigation, I

3     think the sex offender counseling is justified based on the

4     offense.

5          THE COURT:  Ms. Lawson, does probation have anything

6     to add?

7          PROBATION OFFICER:  Your Honor, I believe that

8     language is placed in there so that the probation office has the

9     ability to implement the polygraph testing requirement to aid in

10    the treatment and supervision.  That may be separate and apart

11    from whatever treatment facility also performs those functions.

12    So we would still request that the language remain and also that

13    the probation office have the ability to determine if he can pay

14    the cost of the treatment, and the only way we can back that up

15    is to have that remaining language in there.

16        Also, refraining from alcohol usage is a part of treatment,

17    but also it aids with the supervision and testing requirement

18    that we would ask for.

19          THE COURT:  All right.  Ms. Driggers, do you have

20    anything else you wish to add?

21          MS. DRIGGERS:  Well, your Honor, we would just note

22    that including this language gives the probation office a good

23    bit of power and decision-making authority that we believe is

24    properly vested with the Court.  As Mr. Smith noted, if he

25    wanted to go and have wine with his family at a dinner, this

1    particular provision would keep him from doing that.

2        Also, as the probation officer mentioned, they would like

3    to be the one to make that determination, and our recommendation

4    would be that that be removed, and if there's ever any

5    inclination by the probation officer that Mr. Smith would

6    benefit from such treatment, we could always seek a

7    modification.

8            THE COURT:  I will overrule the objection.  I will

9    modify the proposed condition in this way:  I will not modify

10   the proposed condition regarding participating in sex offender

11   treatment under the guidance and supervision of the probation

12   officer and abiding by the rules, requirements, and conditions

13   of the treatment program, including submitting to polygraph

14   testing to aid in treatment and the supervision process.  I

15   won't modify that because the offense conduct and the relevant

16   conduct listed in the presentence report as well as the conduct

17   to which Mr. Smith pled guilty, it's my information that that

18   conduct, his prior conduct, both admitted conduct and the

19   conduct that's listed as relevant conduct in the presentence

20   report which the Court has adopted as its findings of fact in

21   the case, support that particular condition.

22       As I understand it, there's also an objection in regard to

23   the use of alcohol and the payment, the determination regarding

24   payment.  Mr. Smith will be incarcerated for a period of ten

25   years.  This condition will apply after Mr. Smith is no longer

1    incarcerated, and at that point, it is difficult for this Court

2    to assess in advance what his ability will be to pay the cost of

3    treatment.  The Court will give probation the ability to

4    determine whether he is able to pay all or a part of the cost of

5    treatment based on his ability to pay, as determined by the

6    probation officer at that time.

7         In regard to the use of alcohol, Mr. Smith has a pretty

8    significant record in the presentence report in regard to

9    controlled substance offenses.  Alcohol is demonstrated to

10   reduce folks' inhibition and judgment-making abilities.

11        What this Court will do is, the Court will modify that

12   language to state that Mr. Smith will abstain from the use of

13   alcohol throughout the course of treatment and submit to

14   testing.

15             MS. DRIGGERS:  Okay, your Honor.  Shall I proceed?

16             THE COURT:  You may.

17             MS. DRIGGERS:  We're going to need some help with

18   respect to paragraphs four, five, and six.  If we could turn the

19   page, I believe that paragraph seven, the paragraph that begins:

20   Mr. Smith shall submit his person and any property, house,

21   residence, vehicle, papers, et cetera, basically to inspection

22   by the probation office upon reasonable suspicion, we believe

23   that that paragraph can pretty much be a catch-all for the

24   language in paragraphs four, five, and six.

25        I understand that this case started because of some

1    postings on Backpage or some sexual escort advertisements, but

2    the prohibition against not having a computer, not having media,

3    not using any kind of device, whether or not equipped with a

4    modem or access to the internet, is overly broad and vague.  And

5    we would ask that the Court limit any kind of prohibition to

6    sexually suggestive material or sexually suggestive websites so

7    that he can continue to live a normal life when he gets out of

8    prison with something as innocuous as a cell phone.  And, again,

9    because the probation office can at any time go in and inspect

10   his person, his property, or his computer as mandated by

11   statute, any danger that may be posed can be remedied when the

12   probation office inspects it.

13             THE COURT:  Ms. Bryant?

14             MS. BRYANT:  Your Honor, I would note that the

15   prohibition against owning the electronic devices, it's not a

16   complete prohibition; it's just without obtaining permission

17   from the probation office.  So I don't think it's as

18   constricting.  Ms. Driggers and I were talking, and I believe

19   paragraph seven encompasses a lot of things.  I think maybe the

20   computer monitoring could be important until the probation

21   office maybe determines that it's no longer needed.

22        Like Ms. Driggers said, this offense involved Backpage,

23   where individuals were posting services, escort services, but

24   the problem is, Facebook, social media, all those sorts of

25   things, can be used to kind of further a trafficking offense,

1    further prostitution.

2          So that would be my response to Ms. Driggers's objection.

3    While I don't think that it's appropriate that it needs to be

4    there his entire term of supervised release, maybe it could

5    state as determined as necessary by the probation office.  And

6    that gives them a little discretion to work with Mr. Smith about

7    the necessity to have that.

8                THE COURT:  Ms. Lawson?

9                PROBATION OFFICER:  Your Honor, I would also add that

10   the paragraph seven limits the ability of the probation office

11   to monitor only the items that are the defendant's person and

12   any property, house, or residence, papers, or computers.  Those

13   other conditions would also govern possibly anything he would

14   have access to that's outside of his own personal property.  And

15   one of the conditions, the one about he shall not own or use any

16   computer or device in the future, we can't predict what he will

17   have access to, depending on where he lives, where he works,

18   where he's going to school.  So those other conditions I believe

19   were included to encompass things that we couldn't anticipate on

20   the front end but that he would be able to seek permission from

21   the probation office in order to get access if it was required

22   for his job or school purposes.

23               THE COURT:  All right.  Ms. Driggers, I'll give you

24   the last word on your objection.

25               MS. DRIGGERS:  Your Honor, I mean, I appreciate the

1   probation office's response and the government's as well.  I

2   just think at some point you're just going down a slippery

3   slope, and when you're preventing things that he possibly could

4   have access to, I just think that's just too much and it's vague

5   and overbroad.  So we would just ask the Court to refine that a

6   little bit.

7                 THE COURT:  I overrule the objection.  Paragraph seven

8   is a standard paragraph in regard to the search of his person

9   and property.  Paragraphs four, five, and six refine the

10  probation office's ability in this particular case based upon

11  the conduct with which Mr. Smith was charged, the relevant

12  conduct that's set forth in the presentence information report

13  that the Court has adopted as its findings of fact in this case,

14  and in regard to the conduct to which Mr. Smith has pled guilty

15  in this case.  It does involve the alleged use of the

16  Backpage.com in regard to the offenses, the one to which he pled

17  guilty in this particular case.  So as a result of that, four,

18  five, and six in this Court's view are necessary to make certain

19  that the probation office has at its disposal the ability to

20  monitor Mr. Smith during the term of supervised release in

21  regard to conduct and activity in regard to that -- of that

22  nature, computer in particular since the computer was an issue

23  in this offense and the relevant conduct.

24      As it's noted, paragraph five, which is the paragraph that

25  says Mr. Smith shall not own or use a computer or device,

1    whether or not equipped with a modem or access to the internet

2    at any location without first receiving written permission from

3    the probation officer, it provides the probation officer with

4    the ability in communication with Mr. Smith at the time -- keep

5    in mind you all have agreed to propose to me a ten-year

6    sentence -- and we're talking about ten years in the future as

7    to technology and what will exist.  It will permit the probation

8    officer at that time to confer and consult with Mr. Smith in

9    regard to these issues and particularly in regard to the

10   electronics that may be at issue at that time.

11         The same with paragraph six.  Paragraph six permits the

12   installation of monitoring software and hardware as approved by

13   the probation office at that time and it's more specific than

14   paragraph seven.

15         As a result of that, I believe that paragraphs four, five,

16   six, and seven are warranted based upon a specific finding by

17   this Court of the conduct with which Mr. Smith has pled guilty

18   and the conduct that's listed in the presentence report.  I

19   don't view them as overly broad.  I don't view them as leaving

20   up to the probation office an unnecessary amount of discretion

21   given that this Court is sentencing with the understanding, as

22   the parties have proposed, that Mr. Smith will be incarcerated

23   for ten years before these conditions take effect.

24         Ms. Driggers, anything else?

25              MS. DRIGGERS:  Yes, your Honor.  To the next

1    paragraph.  With respect to the condition that Mr. Smith

2    disclose business and personal financial information, we would

3    object to that based on the fact that his offense of conviction

4    was not a financial crime.  He has no history of financial crime

5    or fraud with respect to businesses.  And we just don't believe

6    that's reasonably related to the offense of conviction.

7            THE COURT:  Ms. Bryant, the government's response?

8            MS. BRYANT:  Your Honor, I thought that was a standard

9    condition that probation usually requires, I think in regards to

10    making sure that they're providing the best supervision.  And

11    also, your Honor, several of these requirements provide that

12    Mr. Smith should pay all or part of the cost of treatment as

13    determined by the probation officer.  I don't know how they can

14    do that without Mr. Smith disclosing his personal financial

15    information.

16            THE COURT:  Ms. Lawson?

17            PROBATION OFFICER:  Your Honor, Ms. Bryant is correct.

18    The probation office will only obtain information in order to

19    verify that the defendant can pay for the services that are

20    offered through the sex offender treatment as well as the

21    substance abuse treatment, and without having access to his

22    business and personal financial information, they can't assess

23    that.

24            THE COURT:  All right.  Ms. Driggers, I'll give you

25    the last word on your objection.

1          MS. DRIGGERS:  Your Honor, I would just note that

2     every month people on supervised release come and fill out a

3     monthly report that has a summary of what their monthly income

4     is and that should be sufficient to make that determination

5     about whether he can provide -- or can pay for treatment.  And

6     with regard to his personal business, I believe that that

7     information can be disclosed in that monthly report.

8          THE COURT:  I don't see that monthly report is

9     inconsistent with this requirement as a special condition of

10    supervision.  I'll also note that the financial condition is

11    needed to verify internet use and extracurricular activities of

12    this defendant while he's on supervised release to make certain

13    that internet use and extracurricular activities aren't contrary

14    to any treatment he's receiving as ordered by the Court.  As a

15    result of that and because I believe this is a standard

16    condition for probation to be able to access that type of

17    information to assess Mr. Smith's ability to pay for the

18    treatment the Court is ordering as well to assess his compliance

19    with the other terms that the Court has ordered, I'll overrule

20    the objection.

21         Anything else, Ms. Driggers?

22         MS. DRIGGERS:  Yes, your Honor.  Let me make sure I've

23    got my paragraphs numbered correctly.  That was paragraph eight.

24    Our objection next would be to paragraph ten.  Yes.  Paragraph

25    ten.  We can take that up next.

```
1          THE COURT:  All right.  Paragraph ten being:
2   Mr. Smith will not associate with or have any contact with
3   convicted sex offenders unless in a therapeutic setting and
4   approved by the probation office?
5          MS. DRIGGERS:  We would ask that language be added
6   "known" convicted sex offenders.  He has to at least know that
7   they are convicted.  He can't be responsible for knowing who
8   people are in advance.  You see my point.
9          THE COURT:  Ms. Bryant?
10         MS. BRYANT:  I have no objection to that, your Honor.
11         THE COURT:  Ms. Lawson?
12         PROBATION OFFICER:  The probation office is fine with
13  that inclusion.
14         THE COURT:  All right.  That paragraph will then be
15  modified to read:  Mr. Smith will not associate with or have any
16  contact with known convicted sex offenders unless in a
17  therapeutic setting and approved by the probation office.
18         MS. DRIGGERS:  And our last objection would be to
19  paragraph 11, the prohibition against him having a P. O. box or
20  a separate storage unit.  Again, I believe that the language in
21  paragraph seven would cover that as his personal effects.
22         THE COURT:  Ms. Bryant?
23         MS. BRYANT:  Your Honor, I may turn to Ms. Lawson to
24  maybe explain to me why probation usually likes to include that
25  provision.
```

1          PROBATION OFFICER:  Your Honor, my understanding is
2    that if he opens a post office box or storage unit, there's no
3    prohibition against that; it's just with the approval of the
4    probation office.  And it goes back to making sure that the
5    probation office has access to monitor his personal property,
6    papers, and any other business or financial dealings that he's
7    doing, and it's just another condition in place to make sure
8    that they can monitor his activity.  And it doesn't preclude him
9    from having those things, just with the permission of the
10   probation office so the information can be reported to the
11   Court.
12         THE COURT:  All right.  Ms. Driggers, I'll give you
13   the last word on your objection.
14         MS. DRIGGERS:  I'm all for supervision, your Honor,
15   but I just believe that that's a little too much and that the
16   language of the statute 3583(d) covers that.  He still has some
17   constitutional rights when he leaves prison.  One of them is to
18   open a P. O. box.  If the probation office wants to know about
19   it, wants to inspect it, they will when they come to his house
20   and look at his personal property and when they talk to him
21   about it.
22         THE COURT:  I overrule the objection.  The condition
23   in my view doesn't prohibit him from having those things.  It
24   requires him to seek probation's permission before opening one
25   of those things, a commercial mail receiving agency or a

1  commercial box or storage unit.  As Ms. Driggers has pointed

2  out, paragraph seven, which is based on 18 U.S.C. 3583(d),

3  permits the probation office to monitor those things.  This

4  requires Mr. Smith to seek probation's approval so probation is

5  aware of what he has in regard to personal effects, property,

6  house, residence, vehicle, papers, computer, and other items.

7  It doesn't prohibit him from having those globally or

8  permanently.  Instead, it does it during the terms of

9  supervision while he's seeking treatment so probation can

10  approve it, can know in advance, monitor it, which they have the

11  ability to do under 18 U.S.C. 3583(d).  I see this as a more

12  specific provision to ensure that probation is aware of these

13  items without having to go and seek them out from Mr. Smith.

14  It's a requirement of Mr. Smith to be aboveboard with the

15  probation office about what his activities are, much like the

16  financial disclosure.

17         Anything else, Ms. Driggers?

18             MS. DRIGGERS:  Perhaps, your Honor, could we go back

19  to paragraph five, just so Mr. Smith is clear and we can get

20  this cleared up on the record in case there's some confusion

21  down the road.  There is a prohibition against Mr. Smith using

22  or owning any computer or device at any location without first

23  receiving permission from the probation officer.

24         This one in particular is not -- it doesn't limit it to

25  just having pornographic material.  It's just shall not own or

1  use any computer or device.  So I want to make sure if Mr. Smith

2  is out in public or with his family and needs to borrow a cell

3  phone to make a phone call, does he have to get written

4  permission from the probation office?  Or if there's an

5  emergency, does he have to get written permission?  Can we have

6  some exception carved out there?

7          THE COURT:  I think the exception is that he can seek

8  written permission from the probation officer in advance.  So if

9  that's an exception that he feels he needs to have at the

10  beginning, that can certainly be set at this time.  I'm not

11  prepared to know ten years from now how people will communicate.

12  I'm not sure I would have said ten years ago everyone will

13  communicate by text.  This is an effort to provide that

14  flexibility and latitude, and he can certainly seek that

15  permission in advance from the probation office.

16          MS. DRIGGERS:  Okay.

17          THE DEFENDANT:  May I say something, your Honor?

18          THE COURT:  Yes.

19          THE DEFENDANT:  Wouldn't this be some kind of level as

20  to -- I mean, this makes me sound like a rapist or a child

21  molester or something.  Would there be some kind of level I have

22  to register under?  I mean, if I have to follow this on

23  supervised release, so be it, I'll do it.  I'll follow that.

24  But would it be a level that -- you know, everything in here

25  makes me sound like a rapist or a child molester or a child

1    pornographer.  That wasn't the case.  I understand I have a sex-

2    trafficking charge.  I understand that.  But everything in here,

3    that's what it makes me sound like.  So I'm going to have to

4    deal with this for the rest of my life.  When I get out of

5    prison, I'll be 45 years old and it will be hard enough to get a

6    job anyway.

7              THE COURT:  These are the conditions, Mr. Smith, that

8    the Court has proposed based on the offense to which you pled

9    guilty and based upon the relevant conduct that is listed in the

10   presentence report which the Court has adopted as its findings

11   of fact in the case.  And based upon that conduct, these are the

12   conditions that the Court feels are appropriate to be imposed in

13   supervised release.

14             THE DEFENDANT:  Okay.  I understand that.  Excuse me.

15   I understand that fact.  But then the facts remain, would it be

16   some kind of level that I'm registering under instead of just

17   registering?  You seen one, you seen them all?

18             THE COURT:  That goes back to the first discussion.

19   That goes back to the first discussion in my determination,

20   which is, both the Bureau of Prisons and the state will likely

21   assess the offense level, the level under the registry.  That's

22   the job that the state agency and the Federal Bureau of Prisons

23   will do.  The Court's not doing that in any way here.  So does

24   that answer your question?  And I'll look to probation to make

25   certain if you feel anything else is necessary in the answer for

1    Mr. Smith that I am omitting?

2              PROBATION OFFICER:  Yes.  The assessment done by the

3    state officials and by the Bureau of Prisons, they do determine

4    certain tiers for sex offenders, depending on the charge and the

5    offense material that's enclosed in the presentence report.  The

6    conditions that are implemented by the Court are simply for

7    supervision purposes once you're under supervised release.

8    Those conditions, after you have terminated from supervised

9    release, will be strictly up to the state tier system at that

10   point.  After you're off of supervised release.  But these

11   conditions will only be implemented by the probation office for

12   the term that you're under supervised release.

13             THE DEFENDANT:  Okay.  Say someone looks in the

14   computer.  Won't they see exactly what it was instead of just

15   looking in there and see sex offender and classify me with

16   everybody else?

17             PROBATION OFFICER:  That's what the state officials

18   will do.  They have a tier system with different levels and they

19   will have access to that.  I'm not sure how the state system

20   determines that based on the offenses, but I know that they do

21   have the tier system.

22             THE DEFENDANT:  So there will be a little description

23   under there as to what I have to register for instead of just a

24   sex registry.

25             THE COURT:  Mr. Smith, I don't know that the probation

1    office can tell you that today.  What I am ordering you to do

2    is, based on the conduct that you have pled guilty, I'm ordering

3    you to register with the state.  The state will make that

4    determination and it's the same as what I'm saying to you today

5    in regard to the conditions that I'm imposing on you.  I believe

6    the conditions -- and I've made the determination and the

7    finding that these conditions are appropriate based upon the

8    offense and based upon the findings of fact that I have adopted

9    from the presentence report.

10          The state has its own system under the sex offender

11   registry.  I'm not prepared to answer your questions about that

12   today.  That's up to the state.  What I'm prepared to do is

13   based upon your offense, I require you to report to them.  So I

14   understand you have specific questions about what their

15   reporting system will be and what they'll classify you as.

16   That's up to the state.

17              THE DEFENDANT:  Yes, ma'am.

18              THE COURT:  Anything further, Ms. Driggers?

19              MS. DRIGGERS:  No, your Honor.

20              THE COURT:  Do you want to take a moment to confer

21   with Mr. Smith to make certain he doesn't have anything further?

22              MS. DRIGGERS:  No, your Honor.

23              THE COURT:  All right.  Ms. Bryant, anything further

24   on behalf of the government?

25              MS. BRYANT:  No, your Honor.

1          THE COURT:  All right.  With that, Ms. Driggers, do

2   you know of any reason why the Court should not impose sentence

3   at this time?

4          MS. DRIGGERS:  No, your Honor.

5          THE COURT:  The Court's carefully considered all of

6   the factors as stated in 18 U.S.C. 3553(a), has considered the

7   sentencing guidelines as advisory, pursuant to *United States v.*

8   *Booker* and Eighth Circuit precedent, and has considered the

9   statements of the attorneys for the government and for Mr. Smith

10  and has also carefully considered the nature of the offense.

11      The Court has considered and reviewed all of those factors

12  in this case before I determined that the plea agreement was an

13  appropriate plea agreement.  For those reasons, I've accepted

14  the plea agreement.

15      Therefore, Mr. Smith is remanded to the custody of the

16  Federal Bureau of Prisons for 120 months.  The Court recommends

17  that Mr. Smith participate in nonresidential substance abuse

18  treatment, mental health counseling, and educational and

19  vocational programs during incarceration.

20      Upon his release from imprisonment, Mr. Smith shall be on

21  supervised release for a term of five years.  Mr. Smith must

22  report to the probation office and the district to which he is

23  released within 72 hours of release from the custody of the

24  Bureau of Prisons, and he must comply with all mandatory and

25  standard conditions that apply.

1    The following special conditions are imposed during the
2    term of supervised release:  Mr. Smith shall participate under
3    the guidance and supervision of the probation office in a
4    substance abuse treatment program, which may include testing,
5    outpatient counseling, and residential treatment.  Further,
6    Mr. Smith shall abstain from the use of alcohol throughout the
7    course of treatment.
8    The probation officer will provide state officials with all
9    information required under any sexual predator and sex offender
10   notification and registration statutes and may direct Mr. Smith
11   to report to these agencies personally.  Mr. Smith shall
12   participate in sex offender treatment under the guidance and
13   supervision of the probation officer and abide by the rules,
14   requirements, and conditions of the treatment program, including
15   submitting to polygraph testing, to aid in treatment and the
16   supervision process.
17   Mr. Smith is required to pay all or a part of the cost of
18   treatment, based on his ability to pay as determined by the
19   probation office.
20   Further, Mr. Smith will abstain from the use of alcohol
21   throughout the course of treatment and submit to testing.
22   Mr. Smith shall not purchase, possess, subscribe, view,
23   listen to, or use any media forms containing pornographic images
24   or sexually oriented materials, including but not limited to
25   written, audio, visual depictions, such as pornographic books,

1    magazines, literature, videos, CDs, DVDs, digital media, or

2    photographs.  This includes materials containing sexually

3    explicit conduct as defined in 18 U.S.C. 2256(2).

4         Mr. Smith shall not own or use any computer or device,

5    whether or not or equipped with a modem or access to the

6    internet, at any location without first receiving written

7    permission from the probation officer.  This includes access

8    through any internet service provider; bulletin board system;

9    gaming system, device or console, online social networking

10   activities; any public or private computer network system; cell

11   phone; or any other remote device capable of internet

12   connection.

13        Mr. Smith shall agree to the installation of computer

14   monitoring software and hardware approved by the probation

15   office and shall contribute to the computer monitoring cost

16   based on the ability to pay as determined by the probation

17   office.  Mr. Smith shall abide by all rules and requirements of

18   the program and shall consent to unannounced examinations of all

19   computer equipment, internal and external storage devices, which

20   may include retrieval and copying of all data from the computers

21   and any internal and external peripherals and/or removal of such

22   equipment for the purpose of conducting a more thorough

23   inspection by the probation officer or probation service

24   representative.

25        Mr. Smith shall submit his person and any property, house,

1    residence, vehicle, papers, computer, or other electronic

2    communication or data storage devices or media and effects to a

3    search at any time, with or without a warrant, by any law

4    enforcement or probation officer with reasonable suspicion

5    concerning a violation of a condition of probation or unlawful

6    conduct by the person and by any probation officer in the lawful

7    discharge of the officer's supervision functions pursuant to 18

8    U.S.C. 3583(d).

9         Mr. Smith shall disclose business and personal financial

10   information upon the request of the U. S. Probation Office.

11        Mr. Smith will not directly or indirectly contact the

12   victims by any means, including in person, by mail,

13   electronically, telephonically, or via third parties.  Further,

14   Mr. Smith will remain at least 100 yards from the victims at all

15   times.  If any contact occurs, Mr. Smith will immediately leave

16   the area of contact and report the contact to the probation

17   office.

18        Mr. Smith will not associate with or have any contact with

19   known convicted sex offenders unless in a therapeutic setting

20   and approved by the probation office.

21        Mr. Smith will not own, use, or have access to the services

22   of any commercial mail receiving agency, nor will Mr. Smith open

23   or maintain a post office box or storage unit, unless approved

24   by the U. S. Probation Office.

25        Mr. Smith shall cooperate in the collection of DNA as

1    directed by the probation office.

2         Mr. Smith shall not possess a firearm, ammunition,

3    destructive device, or any other dangerous weapon.

4         No fine is imposed as Mr. Smith is not able and is not

5    likely to become able to pay all or part of a fine, even with

6    the use of a reasonable installment schedule.

7         A $100 special penalty assessment is mandatory in this

8    case.

9         This nonguidelines sentence is imposed as the parties

10   stipulated to jointly recommending a 120-month sentence, which

11   was within the statutory maximum for the offense to which

12   Mr. Smith pled guilty.

13        Further, his statutory exposure and guideline range

14   calculations would have been significantly higher absent the

15   plea agreement.

16        Mr. Smith has a prior felony conviction and extensive

17   criminal history, some of which was not included in his criminal

18   history score due to the age of the convictions with state

19   authorities.

20        He has a history of illegal substance abuse and mental

21   health issues, which have only been controlled through the use

22   of medication.

23        This sentence is imposed to reflect the seriousness of the

24   offense, to promote respect for the law, and to address the

25   needs of the offender, Mr. Smith.

1          The Court has discussed on the record in responding to the

2    objections raised by Mr. Smith the reason and justifications for

3    this specific and special conditions of supervised release that

4    have been imposed and the Court adopts in this sentence the

5    justifications and the reasons given in ruling on those specific

6    objections as the basis for the Court's imposition of those

7    conditions now.

8          Ms. Driggers, are there any objections to the form of the

9    sentence on behalf of Mr. Smith?

10              MS. DRIGGERS:  No, your Honor.

11              THE COURT:  Ms. Bryant?  On behalf of the government?

12              MS. BRYANT:  No, your Honor.

13              THE COURT:  Mr. Smith, is there anything about this

14    sentence that you feel violates an agreement or understanding

15    that you had with anyone?

16              THE DEFENDANT:  No, ma'am.

17              THE COURT:  With that, Mr. Smith, you can appeal your

18    conviction if you believe your guilty plea was somehow unlawful

19    or involuntary or if there's some other fundamental defect in

20    the proceedings that was not waived by your guilty plea.  You

21    also have a statutory right to appeal your sentence under

22    certain circumstances, particularly if you think the sentence is

23    contrary to the law.

24          However, you may have waived those rights as a part of your

25    plea agreement, and you entered into an plea agreement here

1    which waives some or all of your rights to appeal the sentence
2    itself.

3        Such waivers are generally enforceable, but if you believe
4    the waiver is unenforceable or not valid, you can present that
5    theory to the appellate court.  With few exceptions, any notice
6    of appeal must be filed within 14 days of judgment and
7    conviction being entered in your case.  And that most likely
8    will be either later this afternoon or tomorrow, Mr. Smith.

9        If you don't file a notice of appeal within 14 days, you
10   almost always lose your right to appeal.  If you can't afford a
11   lawyer, you can apply to appeal in forma pauperis or as a poor
12   person and ask for the appointment of a free lawyer.

13       If you ask, if you decide that you want to appeal, the
14   Clerk of the Court will prepare and file a notice of appeal on
15   your behalf.

16       Is there anything else that we need to take care of today,
17   Ms. Driggers?

18           MS. DRIGGERS:  Your Honor, would the Court recommend
19   that the Bureau of Prisons designate a facility for Mr. Smith
20   that is as close to Central Arkansas as possible to facilitate
21   family visitation?

22           THE COURT:  I will do that.  Mr. Smith, I will put
23   that recommendation in my judgment and commitment in this case.
24   The Bureau of Prisons doesn't have to listen to what I
25   recommend.  They will make a decision about where to house you

1    based upon their needs and their determinations.  But I will

2    certainly recommend to them that you be housed in a facility

3    closest to Central Arkansas.

4         Anything else, Ms. Driggers?

5              MS. DRIGGERS:  No, your Honor.

6              THE COURT:  Ms. Bryant?

7              MS. BRYANT:  No, your Honor.

8              THE COURT:  All right.  With that, we are adjourned.

9         (Proceedings adjourned at 12:04 p.m.)

10                    REPORTER'S CERTIFICATE

11        I certify that the foregoing is a correct transcript from
     the record of proceedings in the above-entitled matter.

12

13                              Date:   September 8, 2015

     /s/ Christa R. Jacimore, RDR, CRR, CCR
14        United States Court Reporter

15

16

17

18

19

20

21

22

23

24

25